Filed 8/26/20  P. v. Lopez CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

|  |  |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>NOE MUNGIA LOPEZ,<br><br>Defendant and Appellant. | C090375<br><br>(Super. Ct. No. STKCRFER20180014014 ) |

Defendant Noe Mungia Lopez appeals after entering a no contest plea to possession of hydrocodone for sale in exchange for five years of probation.  As a condition of probation, the court ordered defendant to register as a narcotics offender.  On appeal, defendant contends the magistrate erred by denying his motion to suppress the evidence seized from his car because the officer lacked probable cause to search the car during a traffic stop.  We disagree and conclude the totality of the circumstances surrounding defendant's interaction with the officer established probable cause to search defendant's car.  We do, however, agree with the parties that the narcotics registration

1

requirement should be stricken from the order of probation because of the Legislature's repeal of Health and Safety Code[1] section 11590.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 25, 2018, Stockton Police Officer Daniel Velarde was on assignment with the community response team. While on patrol, Officer Velarde saw a car pull out of a parking lot and drive through a stop sign. Officer Velarde initiated a traffic stop by turning on his overhead lights. The car did not immediately pull over, but instead continued through several intersections before pulling into a parking lot. While he followed the car, Officer Velarde noticed the driver grab a duffel bag from the front passenger seat and place it in the backseat.

Once the driver pulled into the parking lot and stopped, Officer Velarde approached the car and encountered defendant, the sole occupant. Officer Velarde noticed a "strong odor of marijuana c[oming] from the vehicle." Officer Velarde asked defendant how much "money" he had in the car, and defendant replied "[o]nly enough for me to smoke." Officer Velarde then asked where the marijuana was located, and defendant grabbed a clear plastic baggie containing a small amount of marijuana out of the center console. Officer Velarde then removed defendant from the car, detained him in handcuffs, and placed him in the back of his patrol car.

With defendant detained in the patrol car, Officer Velarde proceeded to search defendant's car. When asked by a ride-along passenger, "[h]ey, what [i]s your PC," Officer Velarde stated his probable cause was the odor of marijuana and the baggie defendant produced. He later testified he searched the car "due to the marijuana, . . . very strong odor, and since he only had a little bit in the baggie the odor was more than that was." The strong odor led Officer Velarde to believe the small amount of marijuana defendant showed him was not the only marijuana defendant had in the car.

---

[1] Subsequent section references are to the Health and Safety Code unless otherwise specified.

During the search, Officer Velarde located and searched the duffel bag he saw defendant move into the backseat and seized three "large bags of marijuana" weighing a total of 1,300 grams. Also seized from the duffel bag was a pill bottle with 24 "clear plastic bindles of suspected cocaine," another pill bottle containing suspected hydrocodone, a scale, and a "bulk" of sandwich bags. He also found over $1,600 in defendant's pocket. Elsewhere in the car, Officer Velarde seized two cell phones. After completing the search of defendant's car, Officer Velarde arrested defendant and read him his *Miranda*[2] rights. Defendant said he understood his rights and admitted all seized items belonged to him.

At the preliminary examination, Officer Velarde testified to the above facts relying on his training and experience in investigating and identifying marijuana offenses. As an officer with seven years of experience, Officer Velarde testified he has attended trainings on marijuana identification, and he has investigated the drug "hundreds" of times in the field. He further stated, based on his training and experience, he was able to identify marijuana based on smell alone. He admitted he considered the smell of the marijuana and the baggie defendant showed him to be his probable cause to proceed with the search of the car. Officer Velarde testified the baggie defendant showed him was a cigar bag with a sealing clasp. He testified the zipper at the top was torn off, but repeatedly stated he could not remember whether the baggie was otherwise closed.

Following Officer Velarde's testimony, the court heard argument regarding defendant's motion to suppress all of his statements, the evidence collected from the search of the car, and any evidence collected subsequent to his detention and arrest. Defense counsel argued because the amount of marijuana defendant retrieved from his center console was a lawful amount, Officer Velarde could not rely on its presence to generate probable cause. The prosecution opposed the motion, arguing the recent legalization of marijuana did not change the state of the law and the smell of marijuana,

---

**2**      *Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694].

3

especially the strong smell Officer Velarde testified to, constituted probable cause for him to search the car. The prosecution also argued the cigar bag was not a properly sealed receptacle pursuant to Vehicle Code section 23222, subdivision (b)(1), and was thus an unlawful open container.

The magistrate denied the suppression motion. The magistrate noted Officer Velarde's observation of defendant moving a bag from the front to the back of his car prior to pulling over, stating, "these are things that are gonna [*sic*] go on in the officer's mind as he's approaching the vehicle." The magistrate found the cigar bag was not a properly sealed receptacle pursuant to Vehicle Code section 23222, subdivision (b)(1). Further, the magistrate found Officer Velarde acted reasonably in not relying on defendant's representation the small amount of marijuana in the baggie was all he had, especially in light of defendant's moving the duffel bag and the extremely strong odor Officer Velarde testified about. As such, the magistrate denied the motion.

Defendant waived the remainder of the preliminary examination and the complaint was deemed an information. Defendant renewed his motion to suppress, and it was once again denied. Defendant then pled no contest to possession of hydrocodone for sale and the court sentenced defendant to five years of probation. As a condition of probation, defendant was ordered to register as a narcotics offender.

Defendant appeals.

DISCUSSION

I

*The Court Properly Denied Defendant's Suppression Motion*

Defendant raises two arguments on appeal related to the search of his car. He first argues the totality of the circumstances failed to supply Officer Velarde with probable cause to believe the car contained evidence of a crime. He next argues he was not in violation of Vehicle Code section 23222, prohibiting an open container of marijuana while driving, because the container of marijuana in the center console was closed and because it was not on his person. The People argue Officer Velarde established probable cause to search the vehicle based on the very strong odor of marijuana emanating from

4

the car and defendant's possession of an unsealed container of cannabis while driving. We conclude Officer Velarde established probable cause based on the totality of the circumstances surrounding the traffic stop, which included more than the mere smell of marijuana. As such, we will not address whether defendant possessed an unlawful open container under the Vehicle Code.

A

*Relevant Law*

Where a defendant moves to suppress evidence after a preliminary examination, "the appellate court disregards the findings of the superior court and reviews the determination of the magistrate who ruled on the motion to suppress, drawing all presumptions in favor of the factual determinations of the magistrate, . . . measuring the facts as found by the trier against the constitutional standard of reasonableness." (*People v. Thompson* (1990) 221 Cal.App.3d 923, 940.) In so doing, we defer to the magistrate's factual findings and, exercising our independent judgment, determine whether, "on the facts so found, the search or seizure was reasonable under the Fourth Amendment." (*People v. Glaser* (1995) 11 Cal.4th 354, 362.)

The Fourth Amendment guarantees the right to be free from unreasonable searches and seizures. (U.S. Const., 4th Amend.) Warrantless searches are "*per se* unreasonable . . . . subject only to a few specifically established and well-delineated exceptions." (*Katz v. United States* (1967) 389 U.S. 347, 357 [19 L.Ed.2d 576, 585]; *People v. Superior Court (Walker)* (2006) 143 Cal.App.4th 1183,1196.) One such exception to the warrant requirement is the automobile exception, which allows for warrantless searches of automobiles where an officer has probable cause to believe the vehicle contains contraband or evidence of a crime. (*Carroll v. United States* (1925) 267 U.S. 132, 155-156 [69 L.Ed. 543, 552]; see also *People v. Evans* (2011) 200 Cal.App.4th 735, 753.) Probable cause to search exists "where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." (*Ornelas v. United States* (1996) 517 U.S. 690, 696 [134 L.Ed.2d 911, 918].) An officer who has probable cause to search pursuant to the

5

automobile exception may then conduct a probing search of all "compartments and containers within the vehicle whose contents are not in plain view." (*United States v. Ross* (1982) 456 U.S. 798, 800 [72 L.Ed.2d 572, 578].)

A warrantless automobile search "is not unreasonable if based on facts that would justify the issuance of a warrant, even though a warrant has not actually been obtained." (*United States v. Ross*, *supra*, 456 U.S. at p. 809 [72 L.Ed.2d at p. 584].)  In *Illinois v. Gates* (1983) 462 U.S. 213 [76 L.Ed.2d 527], the United States Supreme Court endorsed a "totality-of-the-circumstances" approach to establishing probable cause to obtain a warrant. (*Illinois*, at p. 230 [76 L.Ed.2d at p. 543].)  When determining whether to issue a warrant, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him [or her] , . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." (*Id.* at p. 238 [76 L.Ed.2d at p. 548].)  Thus, "if the search and seizure without a warrant are made upon probable cause, that is, upon a belief, reasonably arising out of circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure and destruction, the search and seizure are valid." (*Carroll v. United States*, *supra*, 267 U.S. at p. 149 [69 L.Ed. at p. 549].)

As the *Gates* court noted, "probable cause is a fluid concept -- turning on the assessment of probabilities in particular factual contexts -- not readily, or even usefully, reduced to a neat set of legal rules." (*Illinois v. Gates*, *supra*, 462 U.S. at p. 232 [76 L.Ed.2d at p. 544].)  Further, "[a]n officer is entitled to rely on his [or her] training and experience in drawing inferences from the facts he [or she] observes, but those inferences must also be 'grounded in objective facts and be capable of rational explanation.' " (*United States v. Lopez-Soto* (9th Cir. 2000) 205 F.3d 1101, 1105, quoting *United States v. Garcia-Camacho* (9th Cir. 1995) 53 F.3d 244, 246.)  When considering the validity of the evidence, it is to be analyzed "as understood by those versed in the field of law enforcement." (*Illinois*, at p. 232 [76 L.Ed.2d at p. 544], quoting *United States v. Cortez* (1981) 449 U.S. 411, 418 [66 L.Ed.2d 621, 629].)  "The principal components of a

determination of reasonable suspicion or probable cause will be the events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount . . . to probable cause." (*Ornelas v. United States*, *supra*, 517 U.S. at p. 696 [134 L.Ed.2d at p. 919].)  As such, we consider the totality of the circumstances, and analyze these facts as would a reasonable police officer, in assessing the officer's probable cause, rather than looking to singular facts in a vacuum.  (See *Illinois*, at pp. 230-231, 238 [76 L.Ed.2d at pp. 543-544, 548].)

B

*Officer Velarde Had Probable Cause To Search Defendant's Car*

Officer Velarde's testimony established:  (1) defendant failed to immediately pull over for the traffic stop; (2) defendant moved a bag from the front to the back of the car before pulling over for the traffic stop; (3) a strong odor of marijuana emanated from the car; and (4) defendant admitted to possessing a small amount of marijuana.  Officer Velarde further testified about his training and experience, including his seven years of experience as a peace officer.  He attended various training sessions focused on identification and investigation of marijuana.  This included training on identifying marijuana based purely on smell.  Further, he testified about his extensive practical experience in the field.  He stated he investigates cars suspected of containing marijuana "on a daily basis," and has been involved in "hundreds" of investigations involving marijuana.  Based on this training and experience, Officer Velarde believed the small amount of marijuana was not the source of the strong odor.  Officer Velarde was "entitled to rely on his training and experience in drawing inferences from the facts he observe[d]" throughout his encounter with defendant.  (*United States v. Lopez-Soto*, *supra*, 205 F.3d at p. 1105.)

We conclude these facts, together with Officer Velarde's training and experience, established probable cause under the standard detailed above.  Specifically, a reasonable police officer in Officer Velarde's position could believe defendant's moving of the duffel bag was an effort to remove the bag from where it could easily be seen or

otherwise examined during the traffic stop. A reasonable officer with Officer Velarde's training and experience could also believe defendant lied when he presented the small amount of marijuana from the center console and said it was the source of the strong odor of marijuana. Given defendant's actions before and during the traffic stop, together with the strong odor of marijuana, a reasonable officer in Officer Velarde's position could believe defendant's car contained an amount of marijuana prohibited by law.

This case is like *Nonnette*. (*People v. Nonnette* (1990) 221 Cal.App.3d 659.) There, officers received a report of a suspicious parked car consisting of four men who were "ducking up and down." (*Id.* at p. 662.) Once at the car, an officer noticed an open bag containing empty plastic baggies and a prescription bottle inside. (*Id.* at p. 663.) At the preliminary examination, the officer testified he suspected drugs because of the baggies, and therefore ordered the men out of the car and searched the bag, where he found rock cocaine and pills. (*Ibid.*) This court affirmed the denial of the suppression motion, finding "[t]he totality of the suspicious circumstances provided sufficient evidence to support the magistrate's finding [the officer] had probable cause to believe the car contained drugs." (*Id.* at p. 668-669.) The pill bottle and plastic baggies -- while to the untrained eye may have appeared innocuous -- when coupled with the officer's training and experience were reasonably seen as indicative of criminal activity and thus established probable cause. (*Id.* at p. 663, 669.) Similarly, Officer Velarde's observation of defendant's suspicious conduct before and during the traffic stop and the strong odor of marijuana unaccounted for by the marijuana defendant admitted possessing established probable cause defendant's car contained an unlawful amount of marijuana in violation of various statutory provisions. (See §§ 11362.1, subd. (a), 11362.3, subd. (a)(4); Veh. Code, § 23222, subd. (b)(1).)

Defendant attempts to rebut this conclusion by presenting each factor in the probable cause analysis on an individual basis, arguing none of those factors is enough, individually, to establish probable cause. This argument misses the forest for the trees; however, we will discuss his points.

8

Defendant begins by arguing because it is now legal to possess up to an ounce of marijuana, Officer Velarde lacked probable cause to search his car based on the presence of a lawful amount. In making this argument, however, defendant fails to acknowledge the highly-regulated status marijuana maintains in California law. Section 11362.1, subdivision (c) provides "[c]annabis and cannabis products involved in any way with conduct deemed lawful by this section are not contraband nor subject to seizure, and no conduct deemed lawful by this section shall constitute the basis for detention, search, or arrest." Given other statutory regulations placed on marijuana possession, however, "section 11362.1, subdivision (c) does not apply when the totality of circumstances gives rise to a fair probability that an existing marijuana regulation was violated when the search occurred." (*People v. Johnson* (2020) 50 Cal.App.5th 620, 626; citing *People v. Fews* (2018) 27 Cal.App.5th 553, 563.) Existing marijuana regulations include limits on the amount an individual may lawfully possess and the manner in which lawful amounts may be possessed while in a car, boat, or other motor vehicle. (See, e.g., §§ 11362.1, subd. (a) [permitting possession of up to 28.5 grams of cannabis]; 11362.3, subd. (a)(4) [prohibiting possession of open containers of cannabis while driving, operating, or riding in the passenger seat of a motor vehicle]; Veh. Code, § 23222, subd. (b)(1) [prohibiting possession of an open or unsealed container of cannabis while driving a motor vehicle].)

Defendant relies on *Lee* to support his argument the amount of marijuana he showed Officer Velarde could not generate probable cause to search his car. (*People v. Lee* (2019) 40 Cal.App.5th 853.) In *Lee*, officers discovered a small amount of marijuana on the defendant during a patsearch following a traffic stop. (*Id.* at p. 857.) The appellate court reversed the trial court's denial of the suppression motion, reasoning the legalization of marijuana meant courts "attach fairly minimal significance" to its presence. (*Id.* at p. 861.) However, the *Lee* court also noted while "possession of a small (legal) amount of marijuana does not foreclose the possibility that [a] defendant possesses a larger (illegal) amount," there must be "*additional* evidence beyond the mere possession of a legal amount" to generate probable cause to believe the defendant has

9

more marijuana.  (*Id.* at p. 862.)  The *Lee* court determined such additional evidence was lacking there, and thus no probable cause existed.  (*Id.* at p. 866.)

Defendant's characterization of the *Lee* rule is correct.  However, defendant fails to answer for *Lee*'s critical caveat:  while a lawful amount of marijuana is not, *on its own*, enough to establish probable cause, such a lawful amount may establish probable cause where coupled with other factors contributing to an officer's reasonable belief the defendant may be in violation of other statutory regulations of marijuana possession.  (*People v. Lee*, *supra*, 40 Cal.App.5th at p. 862.)  As the People note, Officer Velarde articulated a reasonable basis for his belief defendant possessed an unlawful amount of marijuana.  (See *Carroll v. United States*, *supra*, 267 U.S. at p. 149 [69 L.Ed. at p. 549].)  Officer Velarde testified to the "very strong" odor he noticed emanating from the car that, in his training and experience, he reasonably believed could not be accounted for by the small amount defendant produced from the center console.  Further, Officer Velarde's observations of defendant's behavior following the initiation of the traffic stop, including defendant's failure to immediately pull over and moving the duffel bag to the back of the car, contributed to his reasonable belief defendant was in possession of an unlawful amount of the drug.  These observations constitute the "additional evidence" required by *Lee*.  (See *Lee*, at p. 862.)

Anticipating this conclusion, defendant cites *Kiefer* and argues his furtive movements cannot constitute probable cause.  (*People v. Superior Court (Kiefer)* (1970) 3 Cal.3d 807.)  In *Kiefer*, our Supreme Court held a warrantless automobile search based *solely* on a passenger's furtive movements violated the Fourth Amendment.  (*Kiefer*, at pp. 811-812, 830-831.)  Noting "an innocent gesture can often be mistaken for a guilty movement," our Supreme Court concluded the passenger's furtive movements were not enough, on their own, to justify the officer's warrantless search.  (*Id.* at p. 818.)  Similar to defendant's mischaracterization of *Lee*, defendant fails to acknowledge *Kiefer*'s critical caveat.  The court specifically limited the scope of the *Kiefer* rule to its narrow facts and acknowledged a series of cases wherein a defendant's furtive movements, when coupled with other circumstances, generated probable case.  (*Kiefer*, at p. 819; see, e.g.,

10

*People v. Doherty* (1967) 67 Cal.2d 9, 21-22 [an officer does not need to see contraband as long as he or she sees the suspect deliberately hiding a package which, under the circumstances, is reasonably believed to contain contraband].) Here, as discussed *ante*, Officer Velarde, through his training and experience, reasonably believed defendant possessed an unlawful amount of marijuana based on the strong odor, the small amount defendant showed him, and defendant's furtive movements. Unlike the officer in Kiefer, Officer Velarde did not rely on defendant's movements only. This case, therefore, falls outside the narrow scope of *Kiefer*.

Defendant also argues Officer Velarde's probable cause belief defendant possessed a larger amount of marijuana was mere speculation. Defendant relies on *O'Hearn*, where we reversed the defendants' convictions because officers effectively destroyed evidence favorable to the defense by failing to comply with statutory requirements pertaining to the storage and destruction of controlled substances. (*People v. O'Hearn* (1983) 142 Cal.App.3d 566, 571; see also § 11479.) There, sheriffs seized 85 suspected marijuana plants from defendant's truck, weighing about 100 pounds total. (*O'Hearn*, at p. 568.) One such plant was later identified in a laboratory analysis as marijuana. (*Ibid.*) The other 84 plants were placed in a state forest service truck containing other plants seized from other investigations. (*Id.* at pp. 568-569.) All plants -- totaling 2,970 pounds -- were destroyed. (*Id.* at p. 569.) Defendant offers *O'Hearn* for the proposition the mere visual estimation of a quantity of marijuana is insufficient to establish the gross weight of the marijuana. Therefore, per defendant's argument, speculation as to the strength of the odor of marijuana is similarly insufficient to establish its quantity.

*O'Hearn*, however, was decided on the narrow issue of failure to comply with statutory requirements pertaining to the collection and destruction of seized controlled substances and its prejudicial effect on the defendants' case. (*People v. O'Hearn*, *supra*, 142 Cal.App.3d at p. 571.) As defendant later, correctly points out, "a case is authority only for a proposition actually considered and decided therein." (*In re Chavez* (2003) 30 Cal.4th 643, 656.) In any event, the *O'Hearn* court considered an officer's testimony at

trial, where the standard of proof necessary for conviction is proof beyond a reasonable doubt. (*O'Hearn*, at p. 568; see also *In re Winship* (1970) 397 U.S. 358, 362 [25 L.Ed.2d 368, 374].) Here, we are concerned with probable cause to search, which requires the officer have "a reasonable ground for belief in guilt." (*Carroll v. United States*, *supra*, 267 U.S. at p. 161 [69 L.Ed. at p. 555].) Therefore, while the mere visual or olfactory estimation of an amount of marijuana may not be enough to establish the truth of its weight beyond a reasonable doubt, it is one of many valid considerations when assessing the probable cause to search. In either event, defendant's reliance on *O'Hearn* is unavailing.

For similar reasons, defendant's reliance on *Hua* is misplaced. (*People v. Hua* (2008) 158 Cal.App.4th 1027.) In *Hua*, officers entered defendant's home without a warrant after seeing several individuals smoking marijuana inside. Once inside, the officers seized several marijuana plants and a sword. (*Id.* at p. 1030.) The appellate court concluded the warrantless entry was unjustified because, at the time, possession of less than 28.5 grams of marijuana was a nonjailable offense. (*Id.* at p. 1037.) Defendant posits *Hua* as evidence for his argument Officer Velarde's probable cause belief he would find an unlawful amount of marijuana within the car was founded upon mere conjecture. However, the defendant in *Hua* properly conceded the officers had probable cause to believe a crime was being committed within the apartment, as the officers saw several people smoking marijuana inside. (*Id.* at p. 1034.) The appellate court ruled the entry was unjustified because of the lack of exigent circumstances necessary to justify the warrantless entry into a home. (*Ibid.*) As discussed *ante*, cases are authority only for the issues decided therein. (*In re Chavez*, *supra*, 30 Cal.4th at p. 656.) The *Hua* decision did not rest on whether the officers established probable cause; rather, it was decided on the issue of the officers' warrantless entry into the defendant's apartment. (*People v. Hua*, *supra*, 158 Cal.App.4th at pp. 1034, 1037.) Here, we are not concerned with a warrantless entry into a defendant's home; instead, we are concerned with the warrantless search of defendant's car pursuant to the automobile exception. While the probable cause present in *Hua* did not justify the entry into the defendant's home, it would have justified

12

a search pursuant to the automobile exception. (See *People v. Evans*, *supra*, 200 Cal.App.4th at p. 753 ["Under the automobile exception, police who have probable cause to believe a lawfully stopped vehicle contains evidence of criminal activity or contraband may conduct a warrantless search of any area of the vehicle in which the evidence might be found"].) Defendants reliance on *Hua* is therefore misplaced.

Defendant also directs us to *United States v. Sowards* (4th Cir. 2012) 690 F.3d 583, and asks us to compare it to *People v. Nice* (2016) 247 Cal.App.4th 928. Both cases concern an officer's initiation of a traffic stop without relying on radar, but based purely on observed speeding. (*Sowards*, at p. 584; *Nice*, at p. 934.) In *Sowards*, the Fourth Circuit reversed the district court's denial of the defendant's motion to suppress, concluding the officer "lacked probable cause to initiate a traffic stop based exclusively on his uncorroborated and unsupported belief [the defendant] was travelling 75 mph in a 70-mph zone." (*Sowards*, at p. 597.) The *Nice* court distinguished its facts from *Sowards*. (*Nice*, at p. 941.) For one, the officer in *Sowards* estimated the defendant was driving only five miles above the posted speed limit, while the officer in *Nice* estimated the car was going 10 or 15 miles per hour above the 25-mile speed limit. (*Nice*, at p. 941.) The *Nice* court deferred to the trial court's factual findings as to the credibility of the officer's expertise and concluded his estimate was not merely "in 'slight excess of the speed limit' so as to foreclose a finding of reasonable suspicion based on the visual estimate." (*Ibid.*, quoting *Sowards*, at p. 591.)

We believe defendant's case is more analogous to *Nice* than to *Sowards*. Like the officer's estimation in *Nice* that the defendant was driving significantly above the posted speed limit, Officer Velarde noticed what he believed was the scent of far more marijuana than the defendant initially disclosed to him. Officer Velarde repeatedly testified to the strength of the marijuana he smelled from defendant's vehicle, referring to it as "strong" and "extremely stronger than just the little bit of marijuana [defendant] showed [him]." He also testified about his extensive training and experience lending reliability to his assessments like the expert in *Nice* and unlike the expert in *Sowards*. (See *People v. Nice*, *supra*, 247 Cal.App.4th at p. 941 [holding the officer's extensive

13

training was sufficient to distinguish that case from *Sowards*].) Further, beyond the smell of marijuana, Officer Velarde had "additional indicia of reliability" he could rely on to justify his inference criminal activity was afoot, including defendant's furtive movements prior to pulling over. (See *United States v. Sowards*, *supra*, 690 F.3d at p. 592 ["where the alleged violation is at a speed differential difficult for the naked eye to discern, an officer's visual speed estimate requires additional indicia of reliability to support probable cause"].)

Based on the totality of the circumstances, we conclude Officer Velarde established probable cause to search defendant's car. Defendant's failure to pull over, movement of the bag from the front to the back of the car, the strong smell of marijuana, and the small amount defendant presented to Officer Velarde are all part of the "historical facts" of the interaction which, "viewed from the standpoint of an objectively reasonable police officer, amount[ed] . . . to probable cause." (*Ornelas v. United States*, *supra*, 517 U.S. at p. 696 [134 L.Ed.2d at p. 919].) Accordingly, we affirm the denial of defendant's motion to suppress.

II

*Defendant's Narcotics Offender Registration Requirement Should Be Stricken*

Both defendant and the People agree defendant's narcotics offender registration requirement should be stricken because the Legislature repealed section 11590, which required persons convicted of certain offenses involving controlled substances to register as a narcotics offender with the local law enforcement agency. (Stats. 2019, ch. 580, § 2.) The repeal became effective on January 1, 2020, while defendant's case was still pending and not yet final. We agree.

In *Estrada*, our Supreme Court addressed the issue arising when a criminal statute is amended to mitigate the punishment for a certain proscribed act prior to final judgment in a defendant's case. (*In re Estrada* (1965) 63 Cal.2d 740, 742.) "When the Legislature amends a statute so as to lessen the punishment it has obviously expressly determined that its former penalty was too severe and that a lighter punishment is proper as punishment for the commission of the prohibited act. It is an inevitable inference that the

14

Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally would apply. The amendatory act imposing the lighter punishment can be applied constitutionally to acts committed before its passage provided the judgment convicting the defendant of the act is not final." (*Id.* at p. 745.) The *Estrada* court relied on the common law rule "when the old law in effect when the act is committed is repealed, and there is no saving clause, all prosecutions not reduced to final judgment are barred." (*Id.* at p. 746-747, citing *Spears v. County of Modoc* (1894) 101 Cal. 303, 306.) The court summarized the *Estrada* ruling, positing it "rests on an inference that, in the absence of contrary indications, a legislative body ordinarily intends for ameliorative changes to the criminal law to extend as broadly as possible, distinguishing only as necessary between sentences that are final and sentences that are not." (*People v. Conley* (2016) 63 Cal.4th 646, 659.)

Our Supreme Court recently tackled the issue again in *People v. Superior Court (Lara)* (2018) 4 Cal.5th 299. In *Lara*, the court considered the impact of Proposition 57 on the juvenile process. (*Lara*, at p. 303.) Proposition 57 "prohibits prosecutors from charging juveniles with crimes directly in adult court. . . . Only if the juvenile court transfers the matter to adult court can the juvenile be tried and sentenced as an adult." (*Lara*, at p. 303.) The differences between adult and juvenile court are such that "the impact of the decision to prosecute a minor in criminal court rather than juvenile court can spell the difference between a 16-year-old minor . . . being sentenced to prison for 72 years to life, or a discharge from the [Division of Juvenile Justice]'s custody at a maximum of 23 years of age." (*Id.* at p. 308.) With this in mind, our Supreme Court concluded Proposition 57 is retroactively applicable to juveniles pursuant to the *Estrada* rule. (*Lara*, at p. 314.) Most recently, Our Supreme Court reaffirmed the decision from *Lara*, concluding defendants who suffer from certain mental health disorders are entitled to the ameliorative benefits emanating from Penal Code sections 1001.35 and 1001.36, which created pretrial diversion programs. (*People v. Frahs* (2020) 9 Cal.5th 618, 624-625.) As such, and pursuant to *Estrada* and *Lara*, Penal Codes sections 1001.35 and

15

1001.36 are retroactively applicable to defendants whose cases are not yet final. (*Frahs*, at p. 630.)

The parties agree, as do we, that the repeal of section 11590 served to eliminate a burden narcotics offenders once shouldered. Relying on the old common law rule "when the old law in effect when the act is committed is repealed, and there is no saving clause, all prosecutions not reduced to final judgment are barred," as affirmed by *Estrada*, *Lara*, and *Frahs*, we conclude the order of probation should be modified to strike the narcotics offender registration requirement. (See *In re Estrada*, *supra*, 63 Cal.2d at p. 746-747.)

DISPOSITION

The judgment (order of probation) is modified to strike the narcotics offender registration requirement. As modified, the judgment is affirmed.


/s/
Robie, Acting P. J.


We concur:


/s/
Mauro, J.


/s/                                  ,
Duarte, J.


16